```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
STEPHANIE GITTER,                        :
                                         :
                    Plaintiff,           :
                                         :
        -v-                              :
                                         :      14cv4460(DLC)
TARGET CORPORATION d/b/a TARGET          :
STORES, ELVIN FERMIN, JOHN DOES 1-5,     :      OPINION AND ORDER
said names being fictitious except the   :
same are identified as employees         :
present and employed in the herein       :
described premises, XYZ CORPORATIONS     :
1-5, XYZ ENTITIES 1-5, and JOHN DOES     :
1-4, said names being fictitious         :
except the same are identified as        :
employers or contractors that provided   :
employees to the said defendant TARGET   :
CORPORATION d/b/a TARGET STORES and to   :
the herein described premises,           :
                                         :
                    Defendants.          :
                                         :
---------------------------------------- X
APPEARANCES:


For Plaintiff:
Robert Weiss, Esq.
11 Broadway, Suite 968
New York, NY 10004

For Defendant:
Mitchell B. Levine
Fishman, McIntyre, Levine, Samansky, P.C.
44 Wall Street, 12th Floor
New York, NY 10005
```

Denise Cote, District Judge:

On June 4, 2013, plaintiff Stephanie Gitter ("Plaintiff" or "Gitter") was handcuffed by police officer Yayon Jean-Pierre ("Jean-Pierre") and later arrested for shoplifting from defendant Target Corporation ("Target"). She has sued Target under 42 U.S.C. § 1983 and New York tort law for emotional and physical damages resulting from her handcuffing. Target moves for summary judgment on the grounds that (1) it is not a state actor and therefore is immune from liability under § 1983; and (2) it is not vicariously liable for the conduct of New York Police Department ("NYPD") officer Jean-Pierre. For the following reasons, Target's motion for summary judgment is granted.

## Background

The following facts are undisputed or taken in the light most favorable to Plaintiff. On June 4, 2013, Plaintiff and her two-year-old daughter went to a Target location on East 117th Street in Manhattan. Plaintiff purchased a few items, but still had merchandise in her cart for which she had not paid as she attempted to exit the store. Elvin Fermin ("Fermin"), an Asset Protection Officer for Target, asked Plaintiff to accompany him to a security room. Jean-Pierre, an officer with the Police Service Area 5 Precinct of the NYPD, who was working a "paid

detail" shift that day at Target, was nearby and Fermin asked Jean-Pierre for his assistance.  Together they escorted the Plaintiff and her daughter to the Target security room.  When they were in the security room, Fermin asked the Plaintiff for her ID; she refused to provide it to him.  A short while later Fermin went into an adjoining office and closed the door, leaving Plaintiff and her daughter alone with Jean-Pierre.  Although Jean-Pierre instructed her not to do so, Plaintiff knocked on the office door to try to get Fermin's attention.  Jean-Pierre then handcuffed Gitter.  The parties agree that Jean-Pierre made the decision to handcuff Plaintiff.  Gitter claims that she suffered physical damage to her elbow and emotional damage from the handcuffing.

    Jean-Pierre worked paid detail shifts at Target pursuant to a contract between the NYPD and Target.[1]  Target pays NYPD officers for serving individual security shifts at the stores; officers select these shifts through an internal NYPD computer system.  Target does not contact paid detail officers directly about when they will serve security shifts at the store.  Target pays the NYPD officers by making out a check directly to the officer and mailing the check to the NYPD Paid Detail Unit.  The

---

[1] Plaintiff contends that the contract is inadmissible because it has not been properly authenticated, but does not dispute the description of the relationship between Target and the NYPD officers set forth here.

Unit then sends the check to the officer.  Jean-Pierre received a 1099 tax form from Target rather than a W-2.  Target did not provide Jean-Pierre with any benefits, pension, insurance, or vacation time.  When Jean-Pierre serves his shifts at Target, he wears an NYPD uniform and follows the rules and regulations of the NYPD.  Target does not supply him with any equipment, nor does it instruct Jean-Pierre about when, how, or why to handcuff people in the store.  Target gave Jean-Pierre general instructions and told him where to stand when he began working at Target.  His role was to observe and assist if something happened in the store.

Plaintiff's complaint contains twelve causes of action against both Target and Fermin.  Pursuant to the parties' stipulation, on March 31 several of these causes of action were dismissed with prejudice, including all claims against Fermin.[2] There are seven claims remaining against Target as the sole defendant.  The five state law claims are: assault and battery; negligence; intentional and negligent infliction of emotional distress; and excessive force.  Two federal causes of action

---

[2] The other causes of action that were dismissed are: (1) all claims arising out of conduct that occurred before Gitter entered the "asset protection office" at Target; (2) state law causes of action for false arrest and imprisonment and for malicious prosecution; and (3) causes of action under 42 U.S.C. § 1983 for civil rights violations, false arrest and imprisonment, and malicious prosecution.

4

under 42 U.S.C. § 1983 are described as claims for assault and battery and emotional distress.[3]

## **Discussion**

Target moves for summary judgment on two grounds.  Target argues that it is not a state actor and therefore did not act under color of law as § 1983 requires.  Second, Target argues that Plaintiff's tort claims fail because Target is not vicariously liable for the actions of Jean-Pierre.

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "There is no genuine issue of material fact where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012) (citation omitted).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451,

---

[3] Because this motion is granted on other grounds it is unnecessary to construe Plaintiff's federal law claims.

456 (1992); Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008).

Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, the test for summary judgment "is whether the evidence can reasonably support a verdict in plaintiff's favor." James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000).

6

**I. Target as a State Actor**

Target first argues that it is not a state actor and therefore cannot be held liable under 42 U.S.C. § 1983.  Section 1983 provides a cause of action for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  In other words, "[t]o state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law."  McGugan v. Aldana-Bernier, 752 F.3d 224, 229 (2d Cir. 2014), cert. denied, 135 S. Ct. 1703 (2015) (emphasis added).  "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action."  Fabrikant, 691 F.3d at 206 (citation omitted).[4]

---

[4] Although the parties do not raise this issue, because Target is a corporation, to find Target liable for a violation of § 1983 Plaintiff would also have to offer evidence that Plaintiff's handcuffing was pursuant to Target's policy or custom.  Liability under § 1983 extends only to "persons."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989).  Certain entities such as municipal corporations may be held liable under § 1983 but only for the entity's "policy or custom."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  In other words, there is no respondeat superior liability for municipal corporations under § 1983.  Id. at 691.  The Second Circuit has extended Monell's rationale to private businesses.  Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408-09 (2d Cir.

Target is indisputably a private corporation.  A private entity's actions, however, may be deemed state action for purposes of § 1983 if "the private entity's challenged actions are fairly attributable to the state."  McGugan, 752 F.3d at 229 (citation omitted).  See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 298 (2001) ("The nominally private character of the Association is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings.").  Determining whether a private party is a state actor is "necessarily [a] fact-bound inquiry."  Brentwood Acad., 531 U.S. at 298 (citation omitted).  The Second Circuit uses "no single test to identify state actions and state actors."  Fabrikant, 691 F.3d at 207 (citation omitted).  Rather, there are a "host of factors" that the court has articulated in three distinct tests.  Id.  These tests are: (1) the "close nexus test," which asks whether there "is a sufficiently close nexus between the State and the private conduct"; (2) the "compulsion test," which asks whether "the

---

1990); see also Green v. City of New York, 465 F.3d 65, 82 (2d Cir. 2006).

    Thus, even if it were accepted that Target is a state actor through its contract with the NYPD, the Plaintiff would still need to show that Jean-Pierre acted according to Target's policy or custom.  The Plaintiff has not provided any evidence that Jean-Pierre acted pursuant to such a policy or custom when he handcuffed the Plaintiff.  To the contrary, the parties agree that Jean-Pierre's decision to handcuff the plaintiff resulted from an exercise of his own discretion.

8

State compelled the conduct" at issue; and (3) the "public function test," which asks whether "the private conduct consisted of an activity that has traditionally been the exclusive prerogative of the state." McGugan, 752 F.3d at 229 (citation omitted).  The close nexus test is at issue here.[5]

In applying the nexus test, the Court of Appeals examines the role the government plays in managing the private organization.  For example, in Horvath v. Westport Library, 362 F.3d 147 (2d Cir. 2004), a town appointed half of the library's trustees, provided most of its funding, and maintained control over its personnel decisions.  Id. at 153.  Similarly, a private animal rescue organization was a state actor because its actions "were part of the state function of animal control delegated to the SPCA by state law."  Fabrikant, 691 F.3d at 208; see also Kia P. v. McIntyre, 235 F.3d 749, 756 (2d Cir. 2000) (a private hospital was a state actor when detaining a child pursuant to its statutory "social welfare role . . . as part of the reporting and enforcement machinery" for a state agency).  Even where an entity has a contract with the government, in applying the nexus test courts examine the degree of control the government exercises over the entity's decision-making.  See,

---

[5] The Plaintiff does not assert and the evidence would not permit a finding that Target acted "pursuant to the coercive power of the state or is controlled by the state," Fabrikant, 691 F.3d at 207, or was performing a "public function" delegated to it by the state.  Id.

e.g., <u>Grogan v. Blooming Grove Volunteer Ambulance Corps</u>, 768 F.3d 259, 269 (2d Cir. 2014), cert. denied sub nom. <u>Grogan v. Blooming Grove Volunteer Ambulance Corps.</u>, 135 S. Ct. 1895 (2015) (finding no state action because the "decisive factor" in the "close nexus test" is "the amount of control" the state exercises over a private entity's "management decisions"); <u>Sybalski v. Indep. Grp. Home Living Program, Inc.</u>, 546 F.3d 255, 259 (2d Cir. 2008) (finding that a mental health facility was not a state actor because "the administrators of those facilities make the <u>decision</u>" about how to implement government regulations).

The application of the nexus test begins by examining the specific conduct at issue. <u>Fabrikant</u>, 691 F.3d at 207. In this case the Plaintiff complains that Jean-Pierre's handcuffing injured her. Accordingly, the issue to resolve is whether the actions taken by Jean-Pierre and Target were sufficiently joint when Jean-Pierre placed handcuffs on the Plaintiff that Target can be deemed a state actor.[6]

---

[6] It is worth noting that this case does not present the fact pattern typical of other state action cases. Often, the action at issue is taken by a private entity and the question to be resolved is the degree of control the state exercised over the private entity and its employee's conduct. Here, the Plaintiff asserts that Target should be deemed a state actor because it exercised control over Jean-Pierre, who is an NYPD officer. Thus, this case requires a somewhat inverse application of the nexus test.

The undisputed facts of this case do not support the conclusion that Target is enmeshed with the NYPD such that Target's decisions are fairly attributable to the state. Neither the City of New York nor the NYPD play any role in managing Target.  More specifically, the NYPD does not have a role in managing or controlling Target's security policies. Jean-Pierre wore an NYPD uniform, distinguishing him from Target security employees, and he exercised his own discretion in deciding to handcuff Gitter.  Fermin did not instruct Jean-Pierre to handcuff the Plaintiff and was not even present in the room when Jean-Pierre took that action.

Plaintiff's argument that Target should be deemed a state actor is unavailing.  Plaintiff claims that Jean-Pierre "was working for and paid by Target" and was in "uniform, with a gun and shield."  Although Target paid Jean-Pierre for the time he spent working on its premises, it did not exercise control over his decision-making.  His actions were pursuant to his duties as an NYPD officer enforcing the law.  The fact that Target paid for his time working at its store is insufficient to create the close nexus that would make Target a state actor for purposes of § 1983.

**II. Plaintiff's State Law Claims**

Target also seeks dismissal of each of the remaining state law claims.  It asserts that it cannot be held vicariously liable under New York state law for Jean-Pierre's conduct because Jean-Pierre is an independent contractor and is not Target's employee.

The remaining claims are five state law tort claims for assault, battery, negligence, both negligent and intentional infliction of emotional distress, and excessive force brought against Target as Jean-Pierre's purported employer.  Although not pleaded as a basis of jurisdiction, diversity jurisdiction exists in this action.  In any event, even if diversity jurisdiction were not present, the Court would exercise supplemental jurisdiction to address Target's motion to dismiss the state law claims.

Supplemental jurisdiction exists over state law claims "that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a).  In other words, federal courts may assert supplemental jurisdiction over claims that "derive from a common nucleus of operative fact."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014) (citation omitted).  A district court may "exercise supplemental

jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction." Parker v. Della Rocco, 252 F.3d 663, 666 (2d Cir. 2001) (citation omitted); see also Kroshnyi v. U.S. Pack Courier Servs., Inc., 771 F.3d 93, 102 (2d Cir. 2014). To decide whether to do so, the court must weigh "the traditional 'values of judicial economy, convenience, fairness, and comity.'" Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

Here, the state law claims may be resolved without considering any novel or complex questions of state law. See Carver v. Nassau Cnty. Interim Fin. Auth., 730 F.3d 150, 153-54 (2d Cir. 2013). Convenience and judicial economy weigh heavily in favor of resolving these straightforward tort claims as part of this motion for summary judgment.

Plaintiff's tort claims depend on finding Target vicariously liable for Jean-Pierre's conduct in handcuffing Plaintiff. Plaintiff contends that Target is liable since Jean-Pierre was its employee, while Target argues that Jean-Pierre was performing work at Target as an independent contractor. The general rules governing vicarious liability are the same for both negligent and intentional torts. Under New York law, "a party who retains an independent contractor, as distinguished

13

from a mere employee or servant, is not liable for the independent contractor's negligent acts." Bros. v. New York State Elect. & Gas Corp., 11 N.Y.3d 251, 257 (2008) (citation omitted); see also Vargas v. Beer Garden, Inc., 791 N.Y.S.2d 521, 521-22 (1st Dep't 2005) (finding that a nightclub was not vicariously liable for assault committed by a security guard because the security guard was an independent contractor); Kirkman v. Astoria Gen. Hosp., 611 N.Y.S.2d 615, 616 (2d Dep't 1994) (hospital was not vicariously liable when a security guard raped a patient in part because the guard was an independent contractor).

The Plaintiff has failed to provide evidence from which to find that Jean-Pierre was a Target employee. The "critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." Bynog v. Cipriani Grp., Inc. 1 N.Y.3d 193, 198 (2003). "[I]ncidental control over the results produced without further indicia of control over the means employed to achieve the results" is not sufficient to establish an employer-employee relationship. Matter of Ted Is Back Corp., 64 N.Y.2d 725, 726 (1984).

Target did not exercise sufficient control over Jean-Pierre or the means by which he performed his duties to permit a

finding that it was his employer.  It gave him no training on how to perform his work.  Jean-Pierre was expected to perform his work according to standards set by the NYPD and the law.  Nor did Target exercise control over Jean-Pierre's use of his discretion.  Moreover, signaling his independence from Target, Jean-Pierre wore the NYPD uniform and used the NYPD's equipment.  Finally, Target did not control Jean-Pierre's work schedule and it issued him a 1099 tax form.  See, e.g., Bynog, 1 N.Y.3d at 199 (finding that part-time waiters were independent contractors because they were hired by a "temporary service agency" and provided their own uniforms and equipment); Meyer v. Kumi, 918 N.Y.S.2d 450, 450-51 (1st Dep't 2011) (finding that drivers were independent contractors in part because they were paid via 1099 tax forms and did not need to wear a company uniform).

    Plaintiff's perfunctory arguments that Jean-Pierre is Target's employee do not demonstrate a triable issue of fact on this issue.  Plaintiff argues that Fermin's act in leaving Jean-Pierre alone in the room with the Plaintiff implied a request that Jean-Pierre guard her.  But, working cooperatively with a Target employee in responding to evidence of shoplifting does not suggest that Jean-Pierre was also a Target employee.  Plaintiff further argues that Jean-Pierre was Target's employee because "Target paid him directly" and gave him "instructions."  Target's payments to the NYPD officers pursuant to the paid

15

detail program and general instructions to Jean-Pierre are also insufficient to create an employer-employee relationship.

Finally, Plaintiff appears to argue that, even if Jean-Pierre was an independent contractor, Target may be liable because Jean-Pierre was its agent. As is true for the employer-employee relationship, vicarious liability of a principal depends on the principal's ability to "select its agents and to exercise control over them." Parlato v. Equitable Life Assur. Soc. of U.S., 749 N.Y.S.2d 216, 221 (1st Dep't 2002); see also Abbate v. Abbate, 441 N.Y.S.2d 506, 514-15 (2d Dep't 1981) ("The law is clear that the distinction between" an independent contractor and an agent is that an independent contractor "is not controlled . . . and is responsible only for attaining the desired result."). "Control is the key element" of this inquiry. Abbate, 441 N.Y.S.2d at 515. As discussed above, Target did not exercise sufficient control over Jean-Pierre to render him its agent when Jean-Pierre decided to handcuff the Plaintiff.

## **Conclusion**

Target's June 15, 2015 motion for summary judgment is granted. The Clerk of Court shall enter judgment for Target and close the case.

Dated:    New York, New York
          September 29, 2015

```
                    _____
                         DENISE COTE
                    United States District Judge
```